IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POET DESIGN & CONSTRUCTION, INC. | ) |
| 4615 North Lewis Avenue | ) |
| Sioux Falls, SD 57104, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| DEPARTMENT OF ENERGY | ) |
| 1000 Independence Avenue, SW | ) |
| Washington, DC 20585, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF ("REVERSE FOIA")**

Plaintiff POET Design & Construction, Inc. ("POET"), for its Verified Complaint for

declaratory and injunctive relief against the United States of America Department of Energy

("DOE"), hereby states as follows:

**NATURE OF THE ACTION**

1.      This is a "reverse FOIA" action arising from the recent decision of the DOE not

to redact certain trade secret, confidential, and/or proprietary information contained in reports

that the DOE intends to produce, and may produce at any moment, pursuant to a Freedom of

Information Act ("FOIA") request.  The information at issue was provided to the DOE in

connection with the design and construction of a unique commercial cellulosic ethanol facility in

Emmetsburg, Iowa ("Project Liberty").  It pertains to (i) POET's proprietary processes,

intellectual property, technology, and equipment; (ii) the design, evolution, and scale-up of the

Project Liberty facility and system; (iii) non-public, non-market rates negotiated by POET and its

suppliers; and (iv) POET's internal budgets and cost-accounting procedures.  The DOE's

decision to release this information is arbitrary and capricious and/or otherwise contrary to law

under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.

2.      To avoid irreparable injury and the disclosure of highly-sensitive information to

industry competitors, POET asks that this Court declare that the information in question

constitutes confidential commercial and/or trade secret information that is exempt from

disclosure under FOIA's Exemption Four (5 U.S.C. § 552(b)(4)) and is also prohibited from

disclosure under the Trade Secrets Act.  Additionally, POET respectfully requests that the Court

issue a temporary restraining order and grant preliminary and permanent injunctive relief

enjoining DOE from publicly releasing or otherwise disclosing this information.

## PARTIES

3.      Plaintiff POET is South Dakota corporation with its principal place of business

located in Sioux Falls, South Dakota.

4.      Defendant DOE is a Department of the Executive Branch of the United States.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C.

§ 1331 because this action arises under the laws of the United States, including the APA (5

U.S.C. §§ 701, *et seq.*); FOIA (5 U.S.C. §§ 552, *et seq.*); and the Trade Secrets Act (18 U.S.C.

§ 1905).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

### *Project Liberty*

7.      POET is in the business of designing and constructing bioprocessing facilities to convert corn into ethanol and ethanol co-products.  POET, a subsidiary of POET, LLC — one of the nation's preeminent biofuel developers and producers — has designed and built and, through affiliated entities, managed, numerous ethanol facilities located throughout the United States.

8.      In or around 2007, POET and POET, LLC began to explore the possibility of building a cellulosic ethanol facility in Emmetsburg, Iowa (the "Facility").  POET had already constructed a facility in Emmetsburg that used traditional forms of biomass, namely, corn kernels, to produce traditional grain ethanol.  POET was interested in constructing a new type of facility, adjacent to this existing facility, that would use "second-pass bale biomass" (*e.g.*, corn cobs, stalks, and husks — but not corn kernels — left in corn fields after the primary corn harvest) to produce ethanol.

9.      At the time, this second-pass bale material was discarded by farmers or left in the field to decompose after the corn kernels were harvested.  Finding a way to convert that unused biomass to produce ethanol presented a significant opportunity for ethanol producers, as well as for farmers and the general ethanol-using public.

10.      POET, LLC entered into a joint venture with DSM Innovation, Inc. to design and construct the new Facility, otherwise known as Project Liberty.  POET, LLC and DSM Innovation, Inc. formed a new entity for that purpose, POET DSM Advanced Biofuels, LLC.

11.      Given the innovative nature of this process — as well as the obvious efficiencies associated with developing a valuable commercial use for second-pass bale biomass — POET Project Liberty, LLC (another subsidiary of POET, LLC) chose to seek federal funding from the

DOE for Project Liberty.

12.     The DOE and POET Project Liberty, LLC entered into a certain Technological Investment Agreement for Project Liberty, whereby, among other things, the DOE committed to provide funding for Project Liberty in the form of an approximate $55 million grant.  The Agreement set forth certain measures allowing the DOE to oversee the Project as it progressed.

13.     Pursuant to the Agreement, POET Project Liberty, LLC agreed to allow an independent engineer, R.W. Beck, Inc. ("R.W. Beck") to inspect the Facility to provide an overview of POET's progress to the DOE.

14.     Following its inspection, R.W. Beck issued a "Baseline Report" to the DOE in June 2010 setting forth very detailed findings regarding the results of its inspections and including information that was provided by POET to R.W. Beck.

15.     POET also agreed to provide, and did provide, monthly reports to the DOE regarding the progress of Project Liberty.

### POET Contracts with Andritz, Inc.

16.     In connection with Project Liberty, POET entered into two subcontracts with Andritz, Inc. ("Andritz") in 2010 and 2012 to design, engineer, and construct a biomass pre-treatment system (the "System") to be used in connection with Project Liberty.

17.     The System to be designed and constructed by Andritz was intended to pre-treat second-pass bale biomass on a commercially-scalable level so that the biomass could be converted into low-cost sugars used to produce cellulosic ethanol.

18.     Andritz is a technology and services company located in Alpharetta, Georgia.  It is a subsidiary of Andritz AG, a global supplier of plant systems and services for the hydro-power, pulp and paper, environment and process, metals, and feed and biofuel industries.

19.     Andritz AG is a technology competitor of POET in the biofuel and biorefining industries.  Further, Andritz may be employed, now or in the future, to design systems and equipment for other competitors of POET.

### Andritz Fails to Satisfy the Contract Specifications

20.     In connection with its design and construction of the System, Andritz made certain representations and guarantees to POET regarding the capability of the System — as designed and engineered by Andritz — to continuously operate at a specified feed rate using the available second-pass bales.  Andritz knew that, unless the System could achieve those performance guarantees, the Facility's ability to produce cellulosic ethanol at a commercially-scalable level would be seriously compromised.

21.     The design of the System commenced in 2010, and in August 2012 the final System design and construction was contracted between POET and Andritz.

22.     Once installed, however, the System designed and engineered by Andritz proved incapable of: (i) providing an operable pre-treatment system at design conditions; and (ii) achieving continuous operations at a sufficient feed rate, thereby preventing the Project Liberty from producing cellulosic ethanol at a commercially-scalable level.

23.     By October 2014, it was apparent that the System was not working and POET put Andritz on notice of its defective work.  Over the next year-and-a-half, POET continued to work with Andritz to develop a solution that would allow the System to meet the performance guarantees.  Despite these accommodations, Andritz was never able to fix the System's engineering and design problems.

24.     After terminating Andritz from the project, on April 18, 2016, POET served Andritz with its initial demand for arbitration in connection with the System.

*POET Receives Notice of Andritz's FOIA Requests*

25.     Over the last two years, the arbitration proceedings between POET and Andritz have been ongoing, and the arbitration hearing is scheduled to commence in December 2018.

26.     In late 2017, POET learned for the first time that counsel for Andritz had issued a series of FOIA requests to the DOE in connection with Project Liberty (the "FOIA Requests"). A number of the documents sought through these FOIA Requests are also subject to discovery requests made in the context of the arbitration.  POET believes Andritz is seeking the documents from the DOE in an attempt to bypass the discovery process (including POET's legitimate objections), and to avoid the requirements of the parties' agreed protective order.

27.     On December 20, 2017, POET received three "Initial Letter to Submitter" letters from the DOE, stating that it had received FOIA Requests from an attorney at Kilpatrick Townsend & Stockton LLP (the law firm representing Andritz in the arbitration), seeking the Technological Investment Agreement between the DOE and POET Project Liberty, LLC (GO-18-016); the monthly reports submitted to the DOE (GO-18-017); and the grant application (GO-18-018).

28.     On January 30, 2018, POET received five additional "Initial Letter to Submitter" letters from the DOE.  These letters referred to five more FOIA Requests issued by Andritz's counsel, seeking: R.W. Beck's Report (GO-18-019); the Leidos Independent Engineer's Report (GO-18-020); the Tiger Team Report (GO-18-021); IBR COR Evaluations (GO-18-022); and the quarterly assessments for Project Liberty (GO-18-023).

29.     The Initial Letters to Submitter sent by the DOE to POET attached the documents deemed by the DOE based on its internal review to be responsive to the FOIA Requests.  The DOE provided these documents for POET's review and comment, and provided POET an

opportunity to identify any material in the documents that POET believed to be exempt from public disclosure pursuant to one or more of the applicable FOIA Exemptions.  *See* 5 U.S.C. § 552(b)(1)-(9).  A significant portion of the documents provided by the DOE to POET for review contained information that was proprietary, confidential, and competitively sensitive: hence, subject to one or more FOIA Exemptions.

### *POET Seeks the Redaction of Its Confidential Information by the DOE*

30.     Promptly after receiving the Initial Letters to Submitter sent by the DOE, counsel for POET reached out to Michele Harrington Altieri, Government Information Specialist, DOE Golden Field Office (the author of the Letters and the government official primarily responsible for determining what documents would be produced in response to the FOIA Requests).

31.     POET's counsel explained that much of the information contained in the documents fell within Exemption Four of FOIA, which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged and confidential."  POET's counsel informed Ms. Altieri that it intended to submit proposed redactions to the DOE.

32.     POET sent its proposed redactions to the documents associated with GO-18-016; GO-18-017; and GO-18-018 on January 11, 2018.  The letter accompanying those redactions explained that the responsive documents "contain highly confidential and competitively sensitive, financial, and proprietary information including, but not limited to, intellectual property and trade secrets which are exempt from public disclosure under applicable FOIA exemptions."

33.     POET sent its proposed redactions to the documents associated with GO-18-019; GO-18-020; GO-18-021; GO-18-022; and GO-18-023 on February 14, 2018.  Again, the accompanying letter reiterated that the responsive documents "contain highly confidential and

competitively sensitive, financial, and proprietary information including, but not limited to, intellectual property and trade secrets which are exempt from public disclosure under applicable FOIA exemptions."

### *The DOE Gives Notice of Its Intent to Produce for Requests 17 and 19*

34.     This litigation, at least for the time being, addresses only POET's proposed redactions to the monthly progress reports to be produced pursuant to FOIA Request GO-18-017 ("Request 17") and the R.W. Beck Report to be produced pursuant to FOIA Request GO-18-019 ("Request 19").[1]

35.      For Request 19, the DOE recently issued its Final Notice to Submitter on March 20, 2018.

36.     In this Final Notice to Submitter, the DOE stated that it had adopted some of POET's recommended redactions to the R.W. Beck Report, but rejected other redactions because "this information is publicly available on the internet" and/or because "the public release of information being recommended for redaction would not result in competitive harm to POET-DSM."  The DOE stated that it would publicly release the responsive document on March 27, 2018.

37.     POET requested that this deadline be extended so that it could continue to work with the DOE to determine whether any additional redactions could be adopted to protect the public disclosure of POET's confidential and proprietary information.  Up until April 11, 2018,

---

[1] The DOE has also issued its Final Notices to Submitter for GO-18-021 and GO-18-023.  POET has elected not to challenge those Final Notices through this "reverse FOIA" lawsuit.  The remaining FOIA Requests, *i.e.*, GO-18-016; GO-18-018; GO-18-020; and GO-18-022, remain the subject of ongoing discussions between the DOE and POET.  POET may seek to amend this lawsuit if and when the DOE issues Final Notices to Submitter in connection with these remaining requests, to the extent that they would not afford appropriate protection for POET's trade secrets or other confidential and/or proprietary information as contemplated by the FOIA Exemptions.

the DOE acceded to this request and continued its discussions with POET's counsel.

38.     In fact, during this period, at Ms. Altieri's request, POET provided the DOE with proposed "surgical" redactions to the documents to the documents sought to be produced by the DOE, and also, again at Ms. Altieri's request, prepared a comprehensive chart outlining in detail POET's concerns with the disclosure of particular information, and the bases why such information should be deemed properly exempt from disclosure under Exemption Four.

39.     For both Request 17 and Request 19, POET made extensive, good-faith efforts to cooperate with the DOE and provide it with any and all information necessary to make the appropriate Exemption Four redactions to the DOE records to afford appropriate and adequate protection for POET's trade secrets and other confidential and/or proprietary business information.

40.     POET also provided the redacted documents at issue here to Andritz voluntarily, subject to the parties' protective order, in hope of amicably resolving this issue and avoiding a more public disclosure by the DOE.  The versions of these documents produced by POET to Andritz do not even include the additional redactions that are the subject of this lawsuit.

41.     During a telephone call on April 11, 2018, Ms. Altieri informed POET that she would not continue discussions with POET and intended to immediately produce the R.W. Beck Report (GO-18-019) and the monthly reports submitted to the DOE (GO-18-017) without all of POET's requested redactions.  Ms. Altieri refused POET's request to seek the involvement of an attorney from the Department of Justice or Department of Energy, prior to producing the Report, to evaluate POET's concerns.  POET believes that the DOE will produce these documents at any moment, and in fact, may have already produced some portion of them.  On April 12, 2018, POET reached out to the DOE for further information but has received no response.

42.     The DOE has never issued a Final Notice to Submitter in writing for Request 17.

43.     The information contained in the R.W. Beck Report and the monthly reports that the DOE has refused to redact (the "Confidential Information")[2] falls clearly within FOIA's Exemption Four and the Trade Secrets Act and should not be publicly disclosed.  The Confidential Information includes: (i) POET's proprietary processes, intellectual property, technology, and equipment; (ii) the design, evolution, and scale-up of the Project Liberty facility and system; (iii) non-public, non-market rates negotiated by POET and its suppliers; and (iv) POET's internal budgets and cost-accounting procedures.

44.     POET will suffer irreparable harm from the release of the Confidential Information to the general public — including Andritz, which is a subsidiary of Andritz AG, a competitor of POET — and which may result in the Confidential Information being disseminated to other competitors of POET.

45.     Competitors of POET, including but not limited to Andritz or Andritz AG, could make affirmative use of the Confidential Information, such as by copying POET's proprietary processes and otherwise leveraging POET's intellectual property for their own use.  Likewise, there is a substantial risk that competitors and other market participants could exploit public knowledge of POET's privately-negotiated rates, budgets, or internal accounting procedures to gain an unfair commercial advantage.

46.     There will be no harm to the government from protecting the Confidential Information against the release to the public or to a FOIA requester, nor can Andritz credibly claim to have been harmed as it has already received copies of the documents at issue, subject to

---

[2] Given the sensitive nature of the Confidential Information, POET has not specifically identified its contents in this Complaint.  POET will produce the Confidential Information to the Court for an *in camera* review upon the entry of an appropriate sealing order or otherwise in accordance with the Court's directions.

the protective order.

47.     Protecting the release of the Confidential Information will serve the public

interest by fostering fair competition and preserving the willingness of companies to fully and

freely participate in the DOE's oversight of projects such as Project Liberty, including by

voluntarily providing information that is not strictly required to be produced.

**COUNT I:**
**VIOLATIONS OF THE APA**
**(_FOIA Exemption Four_)**

48.     The allegations of Paragraphs 1 through 47 are incorporated herein by reference.

49.     The Final Notice to Submitter issued by the DOE for Request 19, and related

communications by Ms. Altieri as set forth above in connection with Requests 17 and 19,

constitute final agency actions, and are therefore reviewable actions as defined by the APA, 5

U.S.C. § 704.

50.     The Confidential Information includes trade secrets and/or confidential

commercial and financial information that is exempt from disclosure under Exemption Four of

FOIA, 5 U.S.C. § 552(b)(4).

51.     POET will suffer irreparable harm, including substantial competitive harm, if the

DOE releases this Confidential Information to Andritz, which could also lead to further

disclosure of the Confidential Information to other competitors of POET.

52.     The DOE's determination that the Confidential Information is not within the

scope of Exemption Four is arbitrary and capricious and/or otherwise contrary to law, an abuse

of discretion, and violates and contravenes the Trade Secret Act and the APA, 5 U.S.C. §§ 701-

706.

53.     Accordingly, POET is entitled to and seeks (i) a declaration that the Confidential

Information is within the scope of Exemption Four of FOIA, and (ii) a temporary restraining order and preliminary and permanent injunctive relief barring the DOE's production of the Confidential Information to the public.

## COUNT II:
## VIOLATIONS OF THE APA
### (*Trade Secrets Act*)

54.    The allegations of Paragraphs 1 through 53 are incorporated herein by reference.

55.    The Final Notice to Submitter issued by the DOE for Request 19, and related communications by Ms. Altieri as set forth above in connection with Requests 17 and 19, constitute final agency actions, and are therefore reviewable actions as defined by the APA, 5 U.S.C. § 704.

56.    Disclosure by the DOE of the Confidential Information would violate and contravene the Trade Secrets Act, 18 U.S.C. § 1905.

57.    POET will suffer irreparable harm, including substantial competitive harm, if the DOE releases this Confidential Information to Andritz, which could also lead to further disclosure of the Confidential Information to other competitors of POET.

58.    The DOE's decision to produce the Confidential Information is arbitrary and capricious and/or otherwise contrary to law, an abuse of discretion, and violates and contravenes the Trade Secret Act and the APA, 5 U.S.C. §§ 701-706.

59.    Accordingly, POET is entitled to and seeks (i) a declaration that the disclosure of the Confidential Information is unlawful, and (ii) a temporary restraining order and preliminary and permanent injunctive relief barring the DOE's production of the Confidential Information to Andritz or other third parties.

**DEMAND FOR RELIEF**

Wherefore, Plaintiff POET Design & Construction, Inc. respectfully requests that this Court enter judgment in its favor and against the United States of America Department of Energy, as follows:

a)      Declare, pursuant to 28 U.S.C. §§ 2201-2202, that the Confidential Information is within the scope of Exemption Four of FOIA;

b)      Declare, pursuant to 28 U.S.C. §§ 2201-2202, that disclosure of the Confidential Information would violate and contravene the Trade Secrets Act;

c)      Set aside the DOE's decision to disclose the Confidential Information as arbitrary and capricious, an abuse of discretion, and/or not in accordance with law, in violation of the APA, 5 U.S.C. §§ 701-706;

d)      Grant POET a temporary restraining order and preliminary injunctive relief from disclosure of the Confidential Information by the DOE, its officers, agents, and employees, including without limitation, Michele Harrington Altieri, Government Information Specialist, DOE Golden Field Office, and any of her successors in office, until this Court reaches a decision whether to enjoin the DOE permanently from disclosing the Confidential Information;

e)      Permanently enjoin the DOE, its officers, agents, and employees, including without limitation, Michele Harrington Altieri, Government Information Specialist, DOE Golden Field Office, and any of her successors in office, from disclosing the Confidential Information; and

f)      Granting such other and further relief as may be deemed just and proper.

*   *   *

13

## **VERIFICATION**

I, Jeffrey Heikes, Vice President of Project Management, POET Design & Construction, Inc., verify under penalty of perjury that I have read the above complaint and its contents and that, to the best of my knowledge and understanding, the matters stated therein are true and correct.

Executed this 12th day of April, 2018.

_____
Jeffrey Heikes, Vice President
POET Design & Construction, Inc.

Respectfully submitted,
/s/*Paul M. Bartkowski*
Paul M. Bartkowski
D.C. Bar No. 482432
ADDUCI, MASTRIANI &
SCHAUMBERG LLP
1133 Connecticut Avenue, NW
Washington DC 20036
Phone: (202) 467-6300
Telefax: (202) 466-2006

*Attorney for Plaintiff*
*POET DESIGN &*
*CONSTRUCTION, INC.*